IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANN M. KRAMER                    *
                                 *
                                 *
v.                               *    Civil Action No. WMN-10-2346
                                 *
                                 *
BOARD OF EDUCATION OF            *
BALTIMORE COUNTY                 *
                                 *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM

Before the Court is Defendant's Motion to Dismiss. ECF No.
10. The motion is fully briefed. Upon review of the motion and
the applicable case law, the Court determines that no hearing is
necessary (Local Rule 105.6) and that the motion will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Ann Kramer brings this action alleging that she
was denied promotions on the basis of her gender and that she
was paid less than men employed by Defendant doing the same work
as her. Plaintiff has been employed by Defendant Board of
Education of Baltimore County since 1998, working within the
Department of Physical Facilities. Plaintiff began that
employment as an Assistant Project Manager. In 2006, Defendant
posted an opening for the position of Construction Specialist
for which Plaintiff applied. Plaintiff avers that, when the
position was posted, she was already performing duties identical

to those of a Construction Specialist.  Nonetheless, she was
denied the promotion and the position was given to a male
candidate.  Compl. ¶ 8-9, 13.

At some unspecified time, Plaintiff asked that her job be
reclassified as Construction Specialist.  Her job was
reclassified, but as a "Facilities Inspector I," not as a
Construction Specialist.  This new classification was
accompanied by a modest pay raise, but her pay still fell below
that of a Construction Specialist.  Id. ¶ 11.

In January 2007, Defendant had a second opening for
Construction Specialist which was filled, without reposting.
This position also went to a male.  Id. ¶ 13.  Plaintiff asserts
that the male who filled one of these positions had less
education and experience than her.  The other individual came
from outside of the County system, which was counter to
Defendant's expressed preference for internal candidates.  Id. ¶
14.

Plaintiff's job title was subsequently changed to
"Supervisor, Roofing and Relocatables," a position higher on the
County pay scale but still not as high as Construction
Specialist.  Plaintiff's position was again renamed and she is
now deemed a Project Manager.  At the same time, the
Construction Specialist position was renamed Senior Project

Manager. Plaintiff claims that Senior Project Managers earn about $20,000 more than she, but that she continues to do the same work as the men in those positions. In fact, she claims that she, "takes on additional tasks not required of her male counterparts, since she begins her school projects during the design phase of the renovation projects. Moreover, she handles more schools at once." Id. ¶ 17.

Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC) on March 29, 2007. Def.'s Ex. 1 (EEOC Charge). The EEOC conducted an investigation and, on September 25, 2009, issued a determination that there was reasonable cause to believe that Plaintiff was subjected to discrimination because of her sex with respect to promotion in violation of Title VII. Id. The EEOC then attempted to conciliate the dispute but was unsuccessful. Following the failure of the conciliation efforts, the EEOC referred the matter to the U.S. Department of Justice (DOJ).

On May 18, 2010, the DOJ sent Plaintiff a letter, by certified mail, informing her that the DOJ would not be filing suit on her behalf. Def.'s Ex. 2. The letter further informed Plaintiff that conciliation by the EEOC was unsuccessful but she had a right to institute an action on her own behalf under Title VII. If she desired to commence such an action, the letter

instructed, "such <u>suit must be filed in the appropriate court</u> <u>within 90 days of your receipt of this Notice</u>." <u>Id.</u> (emphasis in original).  The letter was also captioned, "NOTICE OF RIGHT TO SUE WITHIN 90 DAYS." <u>Id.</u>  Plaintiff received the notice on May 25, 2010, according to the return receipt signed by her. Def.'s Ex. 3.

A few days later, Plaintiff received a second notice of right-to-sue that was dated May 27, 2010.  This notice was issued by the EEOC and was captioned, "NOTICE OF RIGHT TO SUE (CONCILIATION FAILURE)."  Pl.'s Ex. A.  In reference to Plaintiff's Title VII claims, this notice stated that

> [t]his will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in a federal or state court. Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost.

<u>Id.</u> (emphasis in original).  An attachment to the notice providing details as to how to file a suit under Title VII also repeated the instruction, "you must file a lawsuit against the respondent(s) named in the charge <u>within 90 days</u> of the date you *receive* this Notice.  Therefore, you should keep a record of this date." <u>Id.</u> at 2 (emphasis in original).

Plaintiff filed suit in this Court on August 25, 2010, asserting three claims: Count One - violation of Title VII of

4

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII); Count Two – violation of the federal Equal Pay Act, 29 U.S.C. § 206(d) (EPA); and Count III – violation of the Maryland Equal Pay Act, Md. Code Ann., Lab. & Empl. § 3-301, et seq. (MEPA). Defendant has moved to dismiss the Complaint in its entirety on the grounds that: Plaintiff's Title VII and EPA claims are untimely; Plaintiff's allegations fail to state an EPA claim; and the MEPA is not applicable to Defendant.

## II. DISCUSSION

### A. Timeliness of Plaintiff's Filing of Her Title VII Claim

It is well settled that a person alleging claims under Title VII must file a lawsuit within 90 days of receipt of the notice of right to sue. 42 U.S.C. § 2000e-5(f). Defendant argues that Plaintiff's Title VII claim is untimely because this action was filed 92 days after Plaintiff received the first right-to-sue notice from the DOJ. Plaintiff responds that the 90-day period in which to file suit commenced upon her receipt of the second right-to-sue notice which she received from the EEOC.[1] It is undisputed that Plaintiff filed suit within 90 days of that second notice.

_____

[1] Plaintiff acknowledges a mistake in the allegations in the Complaint. The Complaint states that "the U.S. Department of Justice issued a Notice of Right to Sue dated May 27, 2010, and this Complaint is filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue." Compl ¶ 5. If she is relying on

As an initial matter, the Court must determine whether, as
to this issue, Defendant's motion should be treated as a motion
to dismiss or one for summary judgment.  Because the Complaint
alleges that Plaintiff filed this suit within 90 days of her
receipt of a right-to-sue notice issued by the DOJ, if treated
as a motion to dismiss, the motion would be denied.  As
Plaintiff acknowledges, however, that this allegation in the
Complaint is inaccurate, see supra note 1, and as both parties
have submitted materials outside the pleadings which the Court
will consider in resolving the motion, the Court will treat the
motion, as to this issue, as one for summary judgment.  See
Talbot v. U.S. Foodservice, Inc., 191 F. Supp. 2d 637, 638 (D.
Md. 2002).

Turning to the merits of Defendant's argument, Defendant is
correct that the notice that triggered[2] the 90-day period in

---

the May 27, 2010, Notice, however, she should have alleged that
it was issued by the EEOC and she asks in her opposition that,
to the extent necessary, the Court consider the Complaint
amended to allege the proper source of that Notice.  Opp'n at 3
n.1.

[2] Throughout its reply brief, Defendant incorrectly states that
this Notice "tolled" the 90-day limitations period.  See, e.g.,
Reply at 5 ("Plaintiff received her copy of the Notice on May
25, 2010, which is the date from which the 90-day limitations
period is tolled."); id. at 6 ("It is patent that the 90-day
limitations period tolled when Plaintiff received Notice from the
DOJ on May 25, 2010.").  To "toll" a statute of limitations is to
"stop the running of" a statute of limitation.  Black's Law
Dictionary (9th ed. 2009).  The Court assumes Defendant meant to

which to bring a legal action was the May 25, 2010, Notice
issued by the DOJ. The enforcement provisions of Title VII
provide that "[i]n the case of a respondent which is a
government, governmental agency, or political subdivision, if
the Commission has been unable to secure from the respondent a
conciliation agreement acceptable to the Commission, the
Commission shall take no further action and shall refer the case
to the Attorney General." 42 U.S.C. § 2000e-5(f)(1). That is
what occurred here.[3] The enforcement provisions further provide
that when the Attorney General either dismisses the charge or
takes no action within the proscribed period, "<u>the Attorney</u>
<u>General</u> . . . shall so notify the person aggrieved and within
ninety days after the giving of such notice a civil action may
be brought against the respondent named in the charge." <u>Id.</u>
(emphasis added).

The regulations implementing these enforcement provisions
further confirm which agency is the appropriate agency to issue
the right-to-sue notice when the respondent to the charge is a
government or governmental agency. <u>See</u> 29 C.F.R. § 1601.28(d).
When the EEOC <u>dismisses</u> a charge, the EEOC issues the right-to-

say that the limitations period was triggered or commenced to run
from the receipt of this notice.

[3] The DOJ is the department of which the Attorney General is the
head. <u>See</u> 28 U.S.C. § 503.

7

sue notice.  Id.  When, however, there has been a finding of
reasonable cause by the EEOC, a failure of conciliation, and the
Attorney General has decided not to file a civil action, "the
Attorney General will issue the notice of right-to-sue."  Id.

Likewise, the courts have recognized this distinction.  In
Kane v. State of Iowa Dep't of Human Servs., 955 F. Supp. 1117
(N.D. Iowa 1997), the plaintiff filed suit within 90 days of
receiving a right-to-sue notice from the EEOC.  Because the case
had been referred to the DOJ upon a failure of conciliation,
however, the court concluded that "the DOJ, not the EEOC, was
the proper agency to issue [] the right-to-sue letter."  955 F.
Supp. at 1133.  Because the DOJ had yet to issue a right-to-sue
notice at the time that the suit was filed, the court found that
the suit was premature.  Id. at 1135.[4]  See also, Spain v.
Virginia Commonwealth Univ., Civ. No. 09-266, 2009 WL 2461662
(E.D. Va. Aug. 11, 2009) (in a case where there was a failure to
conciliate, holding that the DOJ, not the EEOC, was the proper
agency to provide a right-to-sue letter).

The conclusion that the DOJ's notice was the operative
notice and that Plaintiff did not file her civil action within
90 days of receipt of that notice is not determinative, however.

---

[4] The court in Kane proceeded to hold that the plaintiff "cured"
the prematurity of the filing when she received a right-to-sue
notice from the DOJ during the pendency of the action.  Id.

The 90-day period provided for in Title VII is not
jurisdictional and is subject to principles of equitable tolling
as would be a statute of limitations.  Irwin v. Dep't of
Veterans Affairs, 498 U.S. 89, 95-96 (1990).  The Fourth Circuit
requires district courts to engage in a "case-by-case
examination to determine if an equitable tolling of the filing
period is appropriate." Harvey v. City of New Bern Police Dept.,
813 F.2d 652, 654 (4th Cir. 1987).

The Fourth Circuit has cautioned, however, that equitable
tolling is available only in "those rare instances where - due
to circumstances external to the party's own conduct - it would
be unconscionable to enforce the limitation period against the
party and gross injustice would result." Rouse v. Lee, 339 F.3d
238, 246 (4th Cir. 2003) (en banc) (quoting Harris v.
Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)).  Although
equitable tolling of the requisite filing period is rarely
invoked, courts freely allow it where the plaintiff's delay in
filing was the result of misleading conduct or misinformation by
a government agency.  See, e.g., Bishop v. Hazel & Thomas, PC,
151 F.3d 1028, No. 97-2284, 1998 WL 377912, at *2 n. 3 (4th Cir.
July 1, 1998) (recognizing, in dicta, that "[t]he doctrine of
equitable tolling applies to toll the limitations period when,

due to agency error or misinformation, a complainant fails to meet the time requirements for filing . . . a civil action").

In a "two right-to-sue notices" case similar to that presented here, the United States District Court for the Southern District of New York concluded that equitable tolling would be appropriate. Zustovich v. Harvard Maintenance, Inc., Civ. No. 08-6856, 2009 WL 735062 (S.D.N.Y. Mar. 20, 2009). In Zustovich, the plaintiff received two right-to-sue letters from the EEOC and filed her civil suit within 90 days of the second notice, but not of the first. The court concluded that, because the second notice was issued within the 90-day period after the issuance of the first letter, the circumstances presented "compelling justification for the application of equitable tolling." 2009 WL 735062 at *6. "The Court is satisfied that the receipt during the initial limitations period of a second notice indicating a new 90-day period to file suit is sufficient to have convinced Zustovich and her counsel that the limitations period had begun anew at the issuance of the second notice." Id.; see also Hefner v. New Orleans Public Serv., 605 F.2d 893, 896-97 (5th Cir. 1979) (stating, in dicta, that where a second letter is received within ninety days of the first right-to-sue letter, a plaintiff "might persuasively claim that he had failed to file suit within ninety days of the first letter because he

was misled by the EEOC into believing he had ninety days from receipt of the second letter in which to file suit").

Here, Plaintiff could reasonably claim that she was misled by the EEOC notice which clearly stated that she had 90 days from the date of that second notice in which to file her claim. Accordingly, the Court will deny Defendant's motion as to this issue.

### B. Timeliness of Plaintiff's Filing of EEOC Charge

Defendant directs a second timeliness argument at Plaintiff's Title VII discrimination claim related to the timing of Plaintiff's filing of her EEOC charge. For a claimant in Maryland, Title VII requires the filing of a charge of employment discrimination within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000-5(f); Skipper v. Giant Food, Inc., 187 F. Supp. 2d 490, 492 (D. Md. 2002). The Supreme Court has clarified that an "employment practice" generally refers to "a discrete act or single 'occurrence'" that takes place at a particular point in time. 536 U.S. 101, 110-111 (2002). The Court pointed to "termination, failure to promote, denial of transfer, [and] refusal to hire" as examples of such "discrete" acts, and has held that a Title VII plaintiff "can only file a charge to cover

discrete acts that 'occurred' within the appropriate time period." Id. at 114.

Plaintiff filed her EEOC charge on March 29, 2007. Accordingly, in order to state a claim under Title VII, the Complaint must allege some discrete discriminatory employment action that was taken on or after June 2, 2006. The Complaint clearly alleges discriminatory actions within that time period, although perhaps not with the precision one might prefer. Plaintiff alleges that in the fall of 2006, Defendant posted an opening for a Construction Specialist for which Plaintiff applied. Compl. ¶ 8. While Plaintiff does not specify when that position was actually filled, she avers that a second Construction Specialist position was filled in January 2007. Id. ¶ 13. Plaintiff claims both positions were filled by less qualified males. Id. ¶ 14.

In addition to these two denials of promotions, Plaintiff has alleged a denial of a reclassification of her position that falls within the requisite time frame. In her EEOC Charge, Plaintiff asserts that on May 17, 2006, she requested a reclassification of her position. Def.'s Ex. 1. Defendant denied that request on August 7, 2006. Contrary to Defendant's novel contention, the employment action is Defendant's denial of the request, which falls within the 300 days prior to

12

Plaintiff's filing of her charge, not Plaintiff's making of the request.

In addition to these alleged discriminatory denials, Plaintiff has also brought a claim under Title VII for discriminatory compensation. Title VII makes it an "unlawful employment practice" to discriminate "against any individual with respect to his compensation ... because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). Furthermore, under the Lilly Ledbetter Fair Pay Act of 2009 (the FPA), which amended Title VII, one instance in which an actionable unlawful employment practice occurs is "when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 42 U.S.C. § 2000e-5(e)(3)(A). Thus, a plaintiff who alleges that she received a discriminatory paycheck within 300 days prior to the filing of her EEOC charge, has adequately pleaded a Title VII wage discrimination claim. Johnson v. Portfolio Recovery Assoc., LLC, 682 F. Supp. 2d 560, 585 (E.D. Va. 2009). Because Plaintiff alleges that even up to the present date she continues to be paid less than men doing equal work, she has sufficiently alleged that she was paid discriminatory wages during the requisite period.

Advancing another novel argument, Defendant contends that
the FPA does not apply to Plaintiff's claim.  Defendant notes
that Plaintiff filed her EEOC charge on March 29, 2007, "two
months before the effective date of the [FPA]."  Mot. at 17
(emphasis in original).  Defendant also notes that Plaintiff
alleges that the pay differential has existed at least "since
2006," thus preceding the effective date of the FPA.  Id.
(emphasis in original).  Defendant then concludes, "[b]ecause
the alleged pay differential clearly preceded the effective date
of the [FPA], the Title VII claim, insofar as it is predicated
upon alleged disparate pay practices between men and women, is
untimely."  Id.

In passing the FPA, Congress specified that it would "take
effect as if enacted on May 28, 2007 and appl[ies] to all claims
of discrimination in compensation under Title VII . . . that are
pending on or after that date."  Pub. L. 111-2, § 6, 123 Stat. 7
(1992).  Ignoring the plain meaning of this language, Defendant
contends that "[t]he concept of a case 'pending on or after' a
particular date does not mean that any lawsuit filed after that
date falls within the scope of the [FPA's] retroactivity
provision."  Id.  As support for its position that "pending
after" does not mean "pending after," Defendant cites, Lindh v.
Murphy, 521 U.S. 320 (1997).  The Supreme Court in Lindh did

14

state that language providing that a statute "shall apply to cases pending on or after the date of enactment" meant that the statute was applicable to "all cases pending at enactment." 521 U.S. at 327. Nothing in Lindh, however, supports the position that the statute was not also applicable to all cases pending after enactment.

## C. Timeliness of Filing of EPA Claim

Defendant also makes a somewhat half-hearted argument that Plaintiff's EPA claims are time barred. ECF No. 10 at 17-20. The EPA includes a two-year statute of limitations unless a plaintiff alleges a "willful" violation, in which case, a three-year limitations period applies. 29 U.S.C. § 255(a). Defendant acknowledges that Plaintiff has alleged a willful violation. ECF No. 10 at 3. Defendant also acknowledges that the Fourth Circuit has allowed EPA claims to proceed based upon the theory that each paycheck issued at a lower wage than a woman's male counterpart constitutes a new discriminatory action for purposes of EPA limitations accrual. Id. at 18 (citing Nealon v. Stone, 958 F.2d 584 (4th Cir. 1992)). Thus, if Plaintiff has alleged that she received a paycheck reflecting a lower wage than men performing equal work within the three year period prior to her filing this action, her EPA claim is not time barred. The Court concludes that she plainly has.

While couching its argument as one of "untimeliness," the argument is clearly more in the nature of one challenging the sufficiency of the allegations to state an EPA claim.  See ECF No. 10 at 19 (arguing that Plaintiff did not assert sufficient facts to demonstrate that the allegedly unlawful pay practices that went into effect as early as 2006 continued in effect in each and every subsequent time period).  The Court will address the sufficiency of Plaintiff's EPA allegations immediately below.

**D. Sufficiency of Allegations of Equal Pay Act Violation**

In order to establish a prima facie case under the EPA, a plaintiff must demonstrate that (1) an employer has paid different wages to employees of opposite sexes for equal work (2) in jobs which require equal skill, effort and responsibility and which are performed under similar working conditions.  Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 343 (4th Cir. 1994).  Generally, this comparison must be made factor by factor with a specific male comparator.  The plaintiff may not compare herself to a hypothetical male with a composite average of a group's skill, effort, and responsibility but must identify a particular male for the inquiry.  EEOC v. Liggett & Myers, Inc., 690 F.2d 1072, 1076-78 (4th Cir. 1982); but see, Emswiler v. Great Eastern Resort Corp., 692 F. Supp. 2d 737, 746 (W.D.

Va. 2009) (finding plaintiff's comparison of herself to a combination of three particular identifiable males was appropriate under the facts in that case).  In determining whether jobs are substantially equal for purposes of the Equal Pay Act, a plaintiff need not show that her position and that of her male comparator are identical in every respect.  Glunt v. GES Exposition Servs., Inc., 123 F. Supp. 2d 847, 856 (D. Md. 2000).  Instead, rather than relying upon particular job titles, a plaintiff "must show that she and her male counterpart performed substantially equal work in terms of 'skill, effort, and responsibility.'"  Id. (quoting Hodgson v. Fairmont Supply Co., 454 F.2d 490, 493 (4th Cir. 1972)).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe

the facts and reasonable inferences from those facts in the
light most favorable to the plaintiff.  Ibarra v. United States,
120 F.3d 472, 474 (4th Cir. 1997).

In arguing that the Complaint fails to state a claim for
violation of the EPA, Defendant seizes on Plaintiff's inartful
use of the word "comparable" in relating her duties to those of
Defendant's Senior Project Managers.  ECF No. 10 at 10.
Plaintiff did aver, as Defendant quotes, that her work and the
work of the Senior Project Managers "is of a comparable
character."  Id. (quoting Compl. ¶ 17).  In the next sentence of
the Complaint, however, Plaintiff avers "[i]ndeed, Kramer
performs tasks identical to those required of the Senior
Managers."  Compl. ¶ 17 (emphasis added).  The Court finds that,
at least for the purpose of surviving a motion to dismiss,
alleging "identical tasks" conveys the same meaning as "equal
work."

Defendant also seizes on allegations in the Complaint that
Plaintiff "also takes on tasks not required of her male
counterparts."  ECF No. 10 at 10; see also ECF No. 18 at 8
(quoting Plaintiff's assertion that her "duties went far beyond
the duties of other employees who were classified at higher
positions).  Defendant argues that, by asserting that she does
some tasks that are beyond those of her comparators, she is no

longer alleging equal work.  The EPA, however, does not require

exact identity between the plaintiff's job and that of her

comparators.  Instead, a plaintiff must show that the jobs

involve a "common core of tasks" or that "a significant portion

of the two jobs is identical.  The inquiry then turns to whether

the differing or additional tasks make the work substantially

different."  Brewster v. Barnes, 788 F.2d 985, 991 (4th Cir.

1986).  Again, at this stage in the litigation, accepting as

true Plaintiff's allegations and drawing all inferences in her

favor, the Court finds that she has sufficiently alleged "equal

work."

### E. Applicability of Maryland Equal Pay Act

Citing to the wrong statute in its motion, Defendant argued

that the definition of "employer" in the Maryland Equal Pay Act

does not include "the State and its units."  ECF No. 10 (citing

the definition section of the Maryland Wage Payment and

Collection Law (MWPCL), Md. Code Ann., Lab. & Empl. § 3-501(b)).

Defendant corrected that error in its Reply, acknowledging that

the definition of "employer" in the MEPA does include "the State

and its units."  ECF No. 18 at 10 (citing Md. Code. Ann., Lab. &

Empl. § 3-301(b)).  Defendant then argued in its reply that

county school boards have a "'peculiar hybrid nature,'" with

"'attributes of both county and State agencies.'"  Id. at 10-11

19

(quoting <u>Board of Ed. v. BEKA Indust., Inc.</u>, 989 A.2d 1181 (Md. Ct. Spec. App. 2010)). Because of its "local character," as evidenced by the fact that county boards of education set salaries of public education employees in accordance with the personnel system established by the county boards of education, Defendant contends that, for purposes of the MEPA, Defendant should not be considered a unit of the State. <u>Id.</u> at 12.

The Court notes, however, that the definition of employer in the MEPA also includes, "a county and its units." Md. Code. Ann., Lab. & Empl. § 3-301. Therefore, whether the county board is considered a unit of the county or of the State, it would fall within the scope of the MEPA, unless some other statutory provision exempts it from coverage. As an additional argument, Defendant contends that provisions in the Education Article of the Maryland Code reveal just such an exception.

Section 6 of the Education Article addresses "Teachers and Other Personnel." Subsection 4 of Section 6 addresses "Organizations of Certificated Employees" and regulates, <u>inter alia</u>, the designation of bargaining units, collective bargaining agreements, labor negotiations, and strikes. Subsection 5 of Section 6 addresses "Organizations of Noncertificated Employees and provides similar, but not identical, regulations for those employees. Both subtitles end with this provision: "This

subtitle does not make the State labor laws in Title 3 and 7 of the Labor and Employment Article apply to public school employment."  Md. Code Ann., Educ. §§ 6-411(b) & 6-514.

Defendant contends that this language in the Education Article "clearly indicates that Title 3 of the Labor and Employment Article of the Maryland Code Annotated is inapplicable in this matter as it involves the public school employment of Plaintiff."  ECF No. 10 at 23.  The MEPA is within Title 3.  Plaintiff counters that the expansive definition of employer in § 3-301 of the Labor and Employment Article should control.  She contends that, while the public school law may not, "by itself," extend the provisions of the protections of the Labor and Employment law to public school employees, the broad definition of employer in the MEPA "does make the [MEPA] apply to public school employment."  ECF No. 15 at 7 (emphasis in original).

While the Court acknowledges that §§ 6-411(b) and 6-514 could have been more clearly drafted, the Court finds it must agree with Plaintiff that they do not serve to exempt Defendant from the application of the MEPA.  As noted above, the MEPA specifically provides that "the State and its units" as well as "a county and its units" are considered "employers" for the purpose of the MEPA.  The language in the Education Article

relied upon by Defendant does not expressly exempt units of the State or county, it simply states that nothing in those subtitles functions to make the provisions of Section 3 of the Labor and Employment Article applicable to school employees.

In support of its argument, Defendant relies on an unreported decision of this Court, Fink v. Richmond, Civ. No. 7-714 (D. Md. March 24, 2008). Fink, however, addressed the applicability of the MWPCL, not the MEPA, to public education employers. While Judge Chasanow cited §§ 6-411(b) and 6-514 in her decision, she also noted that the definition of employer in the MWPCL does not include State entities. Id., slip op. at 34 (citing Md. Code Ann., Lab. & Empl. § 3-501(b)). Thus, rather than supporting Defendant's position, Fink actually serves to provide some light on the somewhat cryptic language of §§ 6-411(b) & 6-514. Fink highlights that some of the provisions of Title 3 of the Labor and Employment Article, like the MWPCL, do not by their own terms extend to public school employees. Sections 6-411(b) and 6-514 of the Education Article simply clarify that the provisions of Subtitles 4 and 5 of Article 6 of the Education Article do not serve to extend the reach of those provisions to public school employees. As to those provisions of the Labor and Employment Article that do by their own terms

reach public school employees, §§ 6-411(b) and 6-514 have no effect.

## III. CONCLUSION

For the above stated reasons, Defendant's motion will be denied.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: March 9, 2011.